UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BURL BARGERON,

    Petitioner,

vs.                                     Case No.:    3:15-cv-1455-J-34JBT
                                                                      3:09-cr-156-J-34JBT
UNITED STATES OF AMERICA,

    Respondent.
_____/

**ORDER**

This case is before the Court on Petitioner Burl Bargeron's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 11, Amended Motion to Vacate) and Supporting Memorandum (Civ. Doc. 19, Supporting Memorandum).[1] Relying in part on Johnson v. United States, 135 S. Ct. 2551 (2015), and Welch v. United States, 136 S. Ct. 1257 (2016), Bargeron argues that his sentence was unconstitutionally enhanced under the "residual clause" of the Armed Career Criminal Act (ACCA). The United States has responded (Civ. Doc. 7, Motion to Dismiss; Civ. Doc. 20, Response), and Bargeron has replied (Civ. Doc. 23, Reply). For the reasons set forth below, Bargeron's Amended Motion to Vacate is due to be denied.

---

[1]     Citations to the record in the underlying criminal case, United States vs. Burl Bargeron, Case No. 3:09-cr-156-J-34JBT, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:15-cv-1455-J-34JBT, will be denoted as "Civ. Doc. __."

1

**I.     The ACCA**

Ordinarily, possession of a firearm by a convicted felon is punishable by a maximum term of imprisonment of ten years.  18 U.S.C. §§ 922(g)(1), 924(a)(2).  Under the ACCA, however, a felon in possession of a firearm who has at least three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to a 15-year mandatory minimum term of imprisonment.  Id. at § 924(e)(1).

The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

Id. at § 924(e)(2)(B) (emphasis added).  Subpart (i) of this definition is often referred to as the "elements clause."  Subpart (ii) has two components: the first nine words constitute the "enumerated offense clause," and the last 15 words, which are emphasized above, are referred to as the "residual clause."  See Mays v. United States, 817 F.3d 728, 730-31 (11th Cir. 2016).

**II.    Johnson and Welch**

On June 26, 2015, the Supreme Court in Johnson held that the ACCA's residual clause is unconstitutionally vague because the residual clause "creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a

2

violent felony." In re Moore, 830 F.3d 1268, 1270 (11th Cir. 2016) (citing Johnson, 135 S. Ct. at 2557-58, 2563). However, the Supreme Court's holding did not call into question the validity of the elements clause or the enumerated offense clause. Johnson, 135 S. Ct. at 2563. On April 18, 2016, the Supreme Court held in Welch that Johnson announced a new substantive rule that applies retroactively to cases on collateral review. Welch, 136 S. Ct. at 1264-65.

### III. Background

On June 11, 2009, a grand jury sitting in the Middle District of Florida indicted Bargeron on two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. Doc. 1, Indictment). Bargeron proceeded to a bench trial on stipulated facts, at the conclusion of which the Court found him guilty of both charges. (See Crim. Doc. 89, Bench Trial Transcript at 22-24).

The main issue in Bargeron's criminal case was whether he qualified to be sentenced under the ACCA, 18 U.S.C. § 924(e). The United States contended that Bargeron qualified for the ACCA enhancement because he had three prior convictions for a "serious drug offense." (See Crim. Doc. 64, USA's Sentencing Memorandum; Crim. Doc. 68, USA's Supplemental Sentencing Memorandum). Those offenses were as follows: (1) a federal conviction on May 1, 2003, for conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, in the United States District Court for the Middle District of Florida, Case Number 3:02-cr-183-J-21TEM ("the Conspiracy Offense"); (2) a state conviction on May 29, 2003, for trafficking methamphetamine, in the Circuit Court for the Third Judicial Circuit in and for Hamilton County, Florida ("the Hamilton County Offense"); and (3) a state conviction on May 29,

2003, for trafficking methamphetamine, in the Circuit Court for the Third Judicial Circuit in and for Columbia County, Florida ("the Columbia County Offense").

The ACCA issue centered on whether the Conspiracy Offense was committed on an occasion different from the Hamilton County and Columbia County Offenses. (See Crim. Doc. 65 Bargeron's Sentencing Memorandum; Crim. Doc. 69, Bargeron's Supplemental Sentencing Memorandum).[2] The thrust of Bargeron's argument was that the Hamilton County and Columbia County Offenses were part-and-parcel of the Conspiracy Offense, and as such, the Conspiracy Offense should not be counted separately from the two substantive drug offenses. Bargeron's Supplemental Sentencing Memorandum at 3. The United States argued that the Conspiracy Offense was separate from the Hamilton County and Columbia County Offenses because, although the substantive offenses occurred within the conspiracy, the Conspiracy Offense encompassed additional conduct that occurred at different times and places from the Hamilton County and Columbia County Offenses. USA's Sentencing Memorandum at 8-14.

After reviewing the parties' sentencing memoranda, and following an extended sentencing hearing that took place over the course of three days (see Civ. Doc. 7-1, Sentencing Transcript Volume I ["Sent. Tr. Vol. I"]; Civ. Doc. 7-2, Sentencing Transcript Volume II ["Sent. Tr. Vol. II"]; Civ. Doc. 7-3, Sentencing Transcript Volume III [Sent. Tr. Vol. III"]), the Court agreed with the United States that the Conspiracy Offense was separate from the Hamilton County and Columbia County Offenses, Sent. Tr. Vol. III at

---

[2] Bargeron conceded that the Hamilton County Offense and the Columbia County Offense were separate from each other. (Civ. Doc. 7-2, Sentencing Transcript Volume II at 4). Bargeron also did not contest that each of the three previous drug convictions met the ACCA's definition of a "serious drug offense," as set forth in 18 U.S.C. § 924(e)(2)(A).

4

3-10.  The Court explained that the crime of conspiracy "is a crime separate and apart from … any substantive acts that may be committed as part of the conspiracy," and that the crime of conspiracy was completed once Bargeron joined it.  Id. at 4.  As such, the Conspiracy Offense is "a separate and complete offense well before the May 16th [2002] distribution and the May 30th [2002] distribution and possession that occurred in Hamilton and Columbia Counties, respectively."  Id. at 4-5.  The Court found support for that conclusion in the following passage from United States v. Rice, 43 F.3d 601 (11th Cir. 1995):

> An ongoing course of criminal conduct such as narcotics trafficking may involve many such criminal episodes, each a discrete occurrence. The fact that all are related, part of a series, or part of a continuous course of criminal dealing, does not necessarily render them a 'single' criminal episode, particularly where the episodes occur over time. To so hold would insulate the very career criminals the statute is designed to reach-those continuously engaged in criminal conduct.

Sent. Tr. Vol. III at 5 (quoting Rice, 43 F.3d at 608) (quoting United States v. Maxey, 989 F.2d 303, 307 (9th Cir. 1993)).

Additionally, the Court explained that the conduct underlying the Conspiracy Offense included activity that was distinct in time, location, and character from the conduct underlying the Hamilton County and Columbia County trafficking offenses.  Whereas the conduct underlying the Hamilton County and Columbia County Offenses took place on May 16, 2002, and May 30, 2002, respectively, the conduct underlying the Conspiracy Offense lasted from November 2001 through May 2002.  Sent. Tr. Vol. III at 5-6.  The conduct underlying the two substantive trafficking offenses also occurred discretely in Hamilton County and Columbia County, whereas the conduct underlying the conspiracy spanned across Hamilton County, Columbia County, and Suwannee County, Florida

5

(where law enforcement discovered a meth lab that was part of the conspiracy). Id. at 5, 7. And whereas the conduct underlying the Hamilton County and Columbia County trafficking offenses involved the distribution of methamphetamine, the conduct underlying the conspiracy involved Bargeron obtaining materials for manufacturing methamphetamine and "serving as a lookout for another individual cooking methamphetamine[.]" Id. at 7. Thus, the Court was "firmly convinced that these three offenses are separate offenses which must each count as a separate conviction for purposes of the ACCA." Id. at 8.

Accordingly, the Court determined that Bargeron had three separate convictions for "serious drug offenses," which qualified him for a sentence under the ACCA. The United States and Bargeron each requested that the Court impose the mandatory minimum prison sentence of 180 months (15 years). Id. at 11-12. The Court followed that recommendation and sentenced Bargeron to concurrent terms of imprisonment of 180 months as to Counts One and Two, followed by a four-year term of supervised release. Id. at 13.

Bargeron filed a timely appeal. (Crim. Doc. 78, Notice of Appeal). "On appeal, Bargeron argue[d] that the district court erred in applying the ACCA 15–year minimum sentence because his conspiracy offense did not occur on a different occasion than his two trafficking offenses." United States v. Bargeron, 435 F. App'x 892, 893 (11th Cir. 2011). The Eleventh Circuit neither expressly affirmed nor disturbed the Court's "different occasions" ruling. Instead, the Eleventh Circuit avoided the question and held that, "even if the district court erred by concluding that Bargeron's conspiracy conviction qualified as a third predicate ACCA conviction, any such error was harmless," because "Bargeron

stipulated to a 1999 Florida conviction for burglary of a structure." Id. at 894. The court reasoned as follows:

> Burglary of a structure, at the time of Bargeron's offense, constituted a generic burglary to the extent the crime involved a building because it criminalized the unlawful entering or remaining in a building with the intent to commit an offense therein. Compare Fla. Stat. 810.02(1)(a) (1998) with Taylor, 495 U.S. at 599, 110 S.Ct. 2143.[3] To the extent the offense involved the curtilage of a building, it involved conduct that presented a serious potential risk of physical injury to another. See Matthews, 466 F.3d at 1275–76.[4] And at minimum, a Florida burglary offense was punishable by up to 5 years imprisonment. See Fla. Stat. § 810.02(4) (1998); Fla. Stat. § 775.082(3)(d) (1998). Consequently, regardless of whether the offense involved a building or its curtilage, burglary of a structure qualified as a "violent felony."

Bargeron, 435 F. App'x at 894. The court added that "Bargeron's burglary offense occurred on a different occasion [from] his two trafficking offenses," as it occurred at least four years before the drug offenses. Id. Thus, the court concluded that Bargeron "had three qualifying prior convictions even if his conspiracy conviction is disregarded, and was subject to the ACCA 15–year statutory minimum sentence." Id.

Bargeron petitioned the Supreme Court for a writ of certiorari, but the Supreme Court denied the petition on December 5, 2011. Bargeron v. United States, 132 S. Ct. 829 (2011).

### IV. Bargeron's Amended Motion to Vacate (Doc. 11)

In the Amended Motion to Vacate, Bargeron raises three claims. First, Bargeron contends that, in light of Johnson, 135 S. Ct. 2551, his sentence was unlawfully enhanced under the ACCA's residual clause. Amended Motion to Vacate at 4; Supporting

---

[3] Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990).

[4] United States v. Matthews, 466 F.3d 1271 (11th Cir. 2006).

7

Memorandum at 1-4. Bargeron points to the fact that on direct appeal, the Eleventh Circuit affirmed the ACCA enhancement due to a prior burglary conviction, and in doing so the Eleventh Circuit relied in part on the now-invalid residual clause. See Bargeron, 435 F. App'x at 894. Bargeron further argues that, in light of Taylor, 495 U.S. 575, and Mathis v. United States, 136 S. Ct. 2243 (2016), Florida burglary cannot count as a "violent felony" under the enumerated offense clause because Florida's burglary statute is indivisible and broader than generic burglary.[5]

Second, Bargeron contends that he is "actually innocent" of being an armed career criminal because he does not have the three prior convictions necessary to qualify for the ACCA enhancement. Amended Motion to Vacate at 5; Supporting Memorandum at 4-8. Bargeron argues, once more, that the prior Conspiracy Offense was not separate from the substantive drug trafficking offenses in Hamilton County and Columbia County, Florida. Bargeron also appears to argue that (1) the Court was not allowed to rely on Shepard-approved[6] documents to determine whether the Conspiracy Offense was separate, because the timing of an offense is not an element of the crime[7]; (2) even if the Court could have relied on Shepard documents, the presentence investigation report from

---

[5] After the parties filed their briefs, the Eleventh Circuit held that Florida burglary categorically does not qualify as generic burglary under the ACCA's enumerated offense clause. United States v. Esprit, 841 F.3d 1235 (11th Cir. 2016).

[6] Shepard v. United States, 544 U.S. 13 (2005).

[7] The defendant in United States v. Weeks, 711 F.3d 1255 (11th Cir. 2013), also argued that the district court could not rely on a Shepard document (in that case, a charging instrument) to conduct the different-occasions inquiry "because the date of a crime is not an element of the offense." Id. at 1260. The Eleventh Circuit did not accept that argument, but instead affirmed the defendant's ACCA sentence. Id. at 1261-62. See also United States v. Robinson, 664 F. App'x 768, 769 (11th Cir. 2016) (rejecting defendant's argument that "a sentencing court cannot make a different-occasions finding based on non-elemental facts, even if those facts are derived from Shepard documents.") (citing Weeks, 711 F.3d at 1259).

8

Bargeron's 2003 federal Conspiracy Offense ("2003 PSR") was not a Shepard document, so the Court erred in relying on it to determine whether Bargeron's Conspiracy Offense was separate; and (3) in any event, Shepard-approved documents do not establish that the Conspiracy Offense was separate because they do not establish that Bargeron joined the conspiracy at any time before May 16, 2002, when he committed the first substantive drug trafficking offense. See Supporting Memorandum at 4-7.

Third, Bargeron argues that he is "actually innocent" of the ACCA enhancement because the two prior state convictions were not "serious drug offenses," due to the lack of a mens rea requirement. Amended Motion to Vacate at 6. However, Bargeron ultimately withdrew this argument, so the Court will not consider it. Supporting Memorandum at 1.

The United States responds that Bargeron's challenge to the ACCA sentence, based on Johnson, is not timely under 28 U.S.C. § 2255(f)(3). Response at 1 (incorporating argument made in Motion to Dismiss). In the Motion to Dismiss, the United States argues that Johnson has no application to Bargeron because the Court imposed the ACCA sentence on account of him having three separate convictions for serious drug offenses, not on account of the residual clause. Motion to Dismiss at 3-5. The United States also argues that the Court's original ruling that the prior drug offenses were separate from each other was correct. Motion to Dismiss at 5-6; Response at 1-4.

**V. Discussion**

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation

9

of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

A challenge to the ACCA enhancement is cognizable on collateral review under § 2255 because if the prisoner was improperly sentenced under the ACCA's 15-year mandatory minimum, his sentence necessarily exceeded the 10-year statutory maximum that should have applied.  See Spencer v. United States, 773 F.3d 1132, 1143 (11th Cir. 2014) (en banc) ("We can collaterally review a misapplication of the Armed Career Criminal Act because, unlike an advisory guideline error, that misapplication results in a sentence that exceeds the statutory maximum.").

To be entitled to § 2255 relief under Johnson, a prisoner must show that his ACCA sentence was based on the now-voided residual clause.  See In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016) ("Thomas's claim under Johnson fails to establish the required prima facie showing because … the applicability of Thomas's ACCA enhancement does not turn on the validity of the residual clause."); Ziglar v. United States, 201 F. Supp. 3d 1315, 1319 (M.D. Ala. 2016) ("Hence, a sentence not under the ACCA's residual clause, but under one of the other two definitions of violent felony under the ACCA, does not fall within the scope of the substantive rule of Johnson.").  A prisoner's sentence does not depend on the residual clause if he has three or more prior convictions for a "violent felony," as defined by the still-valid elements clause or enumerated offense

clause, or a "serious drug offense." See, e.g., Thomas, 823 F.3d 1345 (prisoner failed to make a prima facie showing that he was sentenced based on the residual clause where he had three prior convictions that, at the sentencing hearing, were deemed ACCA "violent felonies" under the elements clause or the enumerated offenses clause); In re Hires, 825 F.3d 1297 (11th Cir. 2016) (same).

**A. Ground One**

In Ground One, Bargeron contends that his ACCA sentence is illegal in light of Johnson, 135 S. Ct. 2551. Bargeron argues the ACCA enhancement was imposed, at least in part, based on the finding that his Florida burglary conviction counted as a "violent felony" under the now-invalid residual clause. The thrust of the United States' response is that Johnson does not apply to Bargeron because he qualifies for an ACCA sentence due to having been convicted of three separate serious drug offenses.[8]

Bargeron is not entitled to relief on account of Johnson, because his ACCA sentence does not depend on the residual clause. The Court reaffirms its prior ruling that he had three previous convictions for a serious drug offense. For the reasons stated on the record at the sentencing hearing, the Court concludes that Bargeron's serious drug offenses were each committed on separate occasions. See Sent. Tr. Vol. III at 3-10. The Court further explains its decision below.

The ACCA requires the 15–year minimum sentence if the three predicate convictions result from crimes "committed on occasions different from one another." 18

---

[8] Although the United States frames its response as arguing that Bargeron's Johnson claim is untimely, see Motion to Dismiss at 2-6; Response at 1, the gravamen of the United States' argument is that Bargeron's reliance on Johnson lacks merit. Accordingly, the Court finds it simpler to assume, for the sake of argument, that Ground One of Bargeron's Amended Motion to Vacate is timely under 28 U.S.C. § 2255(f)(3), and to discuss the merits of the claim.

U.S.C. § 924(e)(1). "Although the predicate offenses must be distinct, even a small difference in time or place distinguishes convictions for purposes of the ACCA." United States v. Patterson, 423 F. App'x 921, 924 (11th Cir. 2011) (citing United States v. Sneed, 600 F.3d 1326, 1330 (11th Cir. 2010)); United States v. Pope, 132 F.3d 684, 690 (11th Cir. 1998) ("Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small.") (citations omitted).

> [T]he "successful" completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA. Accordingly, we hold that so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA. A showing that the crimes reflect distinct aggressions, especially if the defendant committed the crimes in different places, is particularly probative of the sequential nature of those crimes.

Pope, 132 F.3d at 692.

The fact that a substantive drug offense occurs within the course of a conspiracy offense does not mean that the two offenses count as a single criminal incident. Cf. United States v. Hansley, 54 F.3d 709, 716-17 (11th Cir. 1995) (for purposes of sentencing enhancement under 21 U.S.C. § 841(b)(1)(A), defendant's 1989 conviction for drug possession was distinct from his conviction for a drug conspiracy that lasted from 1985 to 1991, even though the drug possession was in furtherance of the conspiracy).[9] Indeed, Hansley's holding is consistent with the principle that conspiracy is a distinct

---

[9] Although Hansley considered whether a prior conviction was a separate offense for purposes of the sentencing enhancement under 21 U.S.C. § 841(b)(1)(a), the court suggested in Rice, 43 F.3d 601, that the analysis of whether prior convictions should be counted separately under § 841(b)(1)(A) is similar to the "different occasions" analysis under 18 U.S.C. § 924(e). Rice, 43 F.3d at 608 (quoting with approval Maxey, 989 F.2d at 305, a Ninth Circuit ACCA case).

crime, with distinct elements, from a substantive drug offense. As the Supreme Court has explained,

> a substantive crime, and a conspiracy to commit that crime, are not the "same offense" for double jeopardy purposes.... [W]e choose to adhere to the Bayer-Pinkerton[10] line of cases dealing with the distinction between conspiracy to commit an offense and the offense itself. These are separate offenses for double jeopardy purposes.

United States v. Felix, 503 U.S. 378, 389-91 (1992). See also United States v. Ibarguen-Mosquera, 634 F.3d 1370, 1382 (11th Cir. 2011) ("[I]t has long been held that when the conspiracy and substantive charges derive from separate statutes, 'the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses' because the charge for conspiracy requires an element not required by the substantive offense: proof of an agreement.") (quoting Pinkerton, 328 U.S. at 643); United States v. Eley, 968 F.2d 1143, 1145-47 (11th Cir. 1992) (defendant's conviction for conspiracy, under 21 U.S.C. § 846, and for a substantive drug offense in furtherance of the conspiracy, under 21 U.S.C. § 841, did not violate the Double Jeopardy Clause because the two offenses are distinct); United States v. Sarro, 742 F.2d 1286, 1293 (11th Cir. 1984) ("A conspiracy and the related substantive offense which is the object of the conspiracy are separate and distinct crimes…. Moreover, an illegal conspiracy is complete regardless of whether the crime agreed upon is actually consummated.") (citations omitted).

In determining whether prior ACCA offenses occurred on different occasions, the Court must consult Shepard-approved documents. Sneed, 600 F.3d at 1332-33 (holding

---

[10] United States v. Bayer, 331 U.S. 532 (1947), and Pinkerton v. United States, 328 U.S. 640 (1946).

that "sentencing courts may look to certain facts underlying [a] prior conviction" in making the "different occasions inquiry," but must limit themselves to Shepard-approved sources).[11] Shepard-approved sources include the indictment (or "charging instrument"), as well as uncontested facts in a presentence report. United States v. Chitwood, 676 F.3d 971, 976 (11th Cir. 2012) (the "narrow universe" of Shepard documents includes the charging instrument); United States v. McCloud, 818 F.3d 591, 596 (11th Cir. 2016) ("The Shepard documents in this case include … undisputed statements in the PSI.").

Here, the Shepard documents include the charging documents from Bargeron's prior convictions, USA's Sentencing Exhibit 1 (federal conspiracy indictment); USA's Sentencing Exhibit 5 (information from Columbia County Offense); USA's Sentencing Exhibit 7 (information from Hamilton County Offense), as well as the 2003 PSR from Bargeron's federal Conspiracy Offense. Bargeron's counsel in the instant criminal case described the 2003 PSR as "the best evidence in terms of the assessment of the events," and did not dispute its factual accuracy. Sent. Tr. Vol. II at 23-24.[12]

---

[11] Sneed has not been overruled or abrogated. Thus, contrary to Bargeron's argument that the Court may not rely on Shepard documents to make the different-occasions inquiry, Supporting Memorandum at 6-7, the Court may do so. See Weeks, 711 F.3d at 1260-62 (approving use of Shepard documents to make the different-occasions inquiry despite defendant's argument to the contrary); Robinson, 664 F. App'x at 769 (rejecting defendant's argument that "a sentencing court cannot make a different-occasions finding based on non-elemental facts, even if those facts are derived from Shepard documents.") (citing Weeks, 711 F.3d at 1259).

[12] Thus, the Court rejects Bargeron's argument that the Court erred in relying on the 2003 PSR. See Supporting Memorandum at 6. Statements in a presentence report that are undisputed in the instant criminal case, such as those in the 2003 PSR, are an appropriate source of information about a previous conviction. See McCloud, 818 F.3d at 596; see also United States v. Beckles, 565 F.3d 832, 843 (11th Cir. 2009) ("For purposes of sentencing, the district court also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented.") (citing United States v. Bennett, 472 F.3d 825, 832-34 (11th Cir. 2006)).

Bargeron cites United States v. Braun, 801 F.3d 1301, 1305-07 (11th Cir. 2015), for the proposition that a district court cannot rely on the PSR from a previous, unrelated criminal case, but Braun is distinguishable. Importantly, the defendant in Braun objected to the factual accuracy

These documents establish that the methamphetamine Conspiracy Offense was separate from the two substantive drug trafficking offenses. The information from the Hamilton County Offense reflects that on May 16, 2002, Bargeron trafficked between 28 grams and 200 grams of methamphetamine in Hamilton County, Florida. USA's Sentencing Exhibit 7. The information from the Columbia County Offense reflects that on May 30, 2002, Bargeron trafficked between 28 grams and 200 grams of methamphetamine in Columbia County, Florida. USA's Sentencing Exhibit 5. Bargeron does not contest that these two offenses occurred on different occasions; he only contends that these offenses are not separate from the Conspiracy Offense.

The indictment from Bargeron's federal Conspiracy Offense alleges that:

From in or about November 2001, through in or about May 2002, in Columbia, Suwannee and Hamilton Counties, in the Middle District of Florida, and elsewhere,

BURL BARGERON,
a/k/a Buckshot,

the defendant herein, did knowingly, willfully and intentionally combine, conspire, confederate and agree with other persons to distribute a mixture containing methamphetamine, a Schedule II controlled substance, the amount of methamphetamine being 500 grams or more[.]

USA's Sentencing Exhibit 1. The 2003 PSR's description of the Conspiracy Offense conduct comports with the conspiracy indictment, in that it states that "between November 2001 and May 30, 2002, the coconspirators [which includes Bargeron] were accountable for the manufacturing of between 500 grams and 1.5 kilograms of methamphetamine." 2003 PSR at ¶ 19; see also id. at ¶¶ 1-2. Moreover, throughout the sentencing hearing,

---

of the prior PSR in the later criminal case. Id. at 1302, 1306. Here, unlike in Braun, Bargeron did not contest the factual accuracy of the 2003 PSR, even in the instant criminal case. Instead, Bargeron called the 2003 PSR "the best evidence in terms of the assessment of the events." Sent. Tr. Vol. II at 23-24.

the Court and the United States expressed the understanding that Bargeron participated in the conspiracy from November 2001 through May 2002, and Bargeron never contradicted that understanding of the facts.[13]  See Sent. Tr. Vol. I at 18-19, 23; Sent. Tr. Vol. II at 8, 10, 18-20; Sent. Tr. Vol. III at 5, 7.[14]  The federal conspiracy indictment and the 2003 PSR, as well as the undisputed facts discussed at the sentencing hearing, reflect that Bargeron joined the conspiracy sometime in November 2001 and continued participating in it through May 2002.  Thus, the conduct underlying Bargeron's Conspiracy Offense conviction was temporally distinct from the substantive Hamilton County and Columbia County drug offenses.  The conspiracy covered a seven-month stretch of time, lasting from November 2001 to May 30, 2002, whereas the substantive offenses occurred discretely on May 16, 2002, and May 30, 2002.

The conduct underlying the Conspiracy Offense was also geographically distinct, in that it occurred in different locations from the substantive trafficking offenses.  As reflected in the federal conspiracy indictment, the 2003 PSR, and the discussion at the sentencing hearing, the conduct underlying the conspiracy took place across Hamilton County, Columbia County, and Suwannee County, Florida.  USA's Sentencing Exhibit 1; 2003 PSR at ¶¶ 5-19; Sent. Tr. Vol. III at 5-7.  By contrast, the May 16, 2002 trafficking offense occurred in Hamilton County, and the May 30, 2002 trafficking offense occurred

---

[13]    Of course, Bargeron disputed whether, as a matter of law, the Conspiracy Offense was committed on a different occasion, but he never disputed the factual understanding that Bargeron participated in the conspiracy between November 2001 and May 30, 2002.

[14]    Even on direct appeal, Bargeron did not contest the factual assertion that he participated in the conspiracy from November 2001 to May 2002.  See Brief for Appellant at 20-21, Bargeron, 435 F. App'x 892 (Appeal No. 10-15906).  Instead, he argued that the Court's "different occasions" conclusion was erroneous because "the existence of other conduct does not negate the relatedness of the conduct involved in the two state convictions."  Id. at 21.

in Columbia County.  As such, the Conspiracy Offense is not only distinct in time, it is also distinct in location.  Because "[d]istinctions in time and place are usually sufficient to separate criminal episodes from one another," Pope, 132 F.3d at 690, the Court remains "firmly convinced that these three offenses are separate offenses which must each count as a separate conviction for purposes of the ACCA," Sent. Tr. Vol. III at 8.

Moreover, the conduct underlying the Conspiracy Offense was of a different character from the conduct underlying the substantive trafficking offenses.  Whereas the Hamilton County and Columbia County trafficking offenses involved the distribution of methamphetamine, Bargeron's participation in the Conspiracy Offense involved the manufacture of methamphetamine.  See Sent. Tr. Vol. III at 7; 2003 PSR at ¶¶ 5-19.

Taken together, the fact that Bargeron's conduct in the Conspiracy Offense was distinct in time, place, and character from the Hamilton County and Columbia County Offenses illustrates that each offense occurred on "occasions different from one another." 18 U.S.C. § 924(e)(1).  Bargeron joined the methamphetamine conspiracy in November 2001, and upon doing so completed the crime of conspiracy.  See United States v. Shabani, 513 U.S. 10, 15-16 (1994) (a conviction for conspiracy under 21 U.S.C. § 846 does not require proof of an overt act; the essence of the crime of conspiracy is the agreement to commit a crime); United States v. Mercer, 165 F.3d 1331, 1333 (11th Cir. 1999) (a defendant commits conspiracy under 21 U.S.C. § 846 when he makes an agreement with one or more other persons to do an unlawful act).  After Bargeron joined the conspiracy, he trafficked in methamphetamine on May 16, 2002, and he did so again on May 30, 2002.  Bargeron thus made "a subsequent conscious decision to commit another crime" each time he trafficked in methamphetamine, making the subsequent

trafficking offenses "distinct from the [Conspiracy Offense] for purposes of the ACCA." Pope, 132 F.3d at 692. At any point in time between November 2001, May 16, 2002, and May 30, 2002, Bargeron could have desisted from criminal conduct, but he chose not to do so.

As such, each of Bargeron's serious drug offenses were committed "on occasions different from one another" for purposes of the ACCA. Because Bargeron has three serious drug offenses, he qualifies for a sentence under the ACCA, irrespective of the residual clause and the Supreme Court's decision in Johnson, 135 S. Ct. 2551. Therefore, relief on Ground One is due to be denied.

**B. Ground Two**

In Ground Two, Bargeron contends that he is "actually innocent" of being an armed career criminal. Amended Motion to Vacate at 5. Putting aside any question about whether Bargeron's legal challenge to the ACCA enhancement qualifies as an "actual innocence" claim, Bargeron is not entitled to relief.[15] For the reasons set forth under Ground One, Bargeron is not "actually innocent" of being an armed career criminal. Bargeron has three previous convictions for a serious drug offense, each committed on occasions different from one another. See 18 U.S.C. § 924(e)(1). Therefore, relief on Ground Two is due to be denied.

---

[15] The Eleventh Circuit has held that the "actual innocence" exception does not apply to a defendant's claim that he was wrongly sentenced as a Guidelines career offender because his conviction was not a "crime of violence" under the Guidelines. McKay v. United States, 657 F.3d 1190, 1191-92, 1198 (11th Cir. 2011). The court reasoned that the actual innocence exception could not save the claim because it was "one of legal, rather than factual, innocence and thus fails to fall within the actual innocence exception's purview." Id. at 1198. McKay suggests that the "actual innocence" exception also would not apply to a defendant's claim that he is legally innocent of the ACCA enhancement. Hill v. United States, 569 F. App'x 646, 648 (11th Cir. 2014) (rejecting prisoner's claim that he was actually innocent of the ACCA sentence).

18

## VI. Certificate of Appealability

If Bargeron seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Bargeron "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner Burl Bargeron's Amended Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 11) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Bargeron, terminate any pending motions, and close the file.

3. If Bargeron appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 26th day of April, 2017.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc 19

Copies:

Counsel of record
Petitioner Burl Bargeron